UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DAVID J. CLARK,

        Plaintiff,

v.                                        Case No. 06-C-0242

GREG SCHALLER and
ABBAS ANGHA,

        Defendants.

**MEMORANDUM DECISION AND ORDER GRANTING SUMMARY JUDGMENT
AND DENYING MOTION FOR DEFAULT JUDGMENT**

      Plaintiff David J. Clark, a Chapter 980 detainee at Wisconsin Resource Center ("WRC"), sued defendants Greg Schaller and Abbas Angha, WRC staff members,[1] under 42 U.S.C. § 1983, alleging they violated his Due Process rights under the Fourteenth Amendment by placing him in 72-hour reassignment status following an altercation Clark had with a fellow civil detainee. Defendants have filed a motion for summary judgment. Plaintiff has not timely responded to the motion, but has filed a motion for default judgment.[2] For the following reasons, defendants' motion will be granted, and plaintiff's, denied.

---

[1] Schaller no longer works at WRC. (DPFOF ¶ 1.)

[2] Clark termed his filing a "request" for default judgment, but I will interpret it as a motion for same.

## BACKGROUND[3]

Clark is a civil detainee under Wisconsin's Sexually Violent Persons Law, Wis. Stat. ch. 980, and is housed at WRC. On February 18, 2006, Clark became involved in an altercation with a fellow detainee. The two detainees did not comply with staff instructions to calm down. In fact, the altercation escalated to the point of threatened physical injury. After Clark called the other patient "nigger," the other patient said, "I'll kick your ass," and Clark responded, "Just try it." (DPFOF ¶ 10.) Schaller, then a Supervising Officer at WRC, and Angha, a Psychiatric Care Supervisor ("PCS") at WRC, were called in to assist and evaluate the situation, in keeping with WRC protocol. Clark was uncooperative and argumentative with staff, who then placed him in 72-hour reassignment status. Clark was moved to another unit and placed in this status pending an investigation into the altercation.

Placing a patient in 72-hour reassignment status is a normal part of WRC's investigation process. It allows the staff to investigate the alleged misconduct and determine which steps should be taken in response. It also allows staff to maintain a safe environment for themselves and patients. The restrictions imposed as part of 72-hour reassignment status (e.g., no off-unit activities and limitations on personal clothing and electronic items) are not punitive or retaliatory. Rather,

---

[3] Unless otherwise stated, the relevant facts are based on defendants' proposed findings of fact. Pursuant to Civil L.R. 56.2 (E.D.Wis.), the court "must" conclude that there is no genuine dispute of material fact as to defendants' proposed findings of fact because Clark did not respond to them.

Clark's complaint states that: "Plaintiff David J. Clark declares under penalty of perjury that the foregoing is true and correct to the best of his knowledge and belief . . . ." By declaring under penalty of perjury that his complaint is true and signing the document, Clark has verified his complaint pursuant to 28 U.S.C. § 1746. Thus, in addressing defendants' summary judgment motion, the factual assertions in Clark's complaint that comply with the requirements of Fed. R. Civ. P. 56(e) are considered as if they were made in an affidavit. *See Ford v. Wilson*, 90 F.3d 245, 246 (7th Cir. 1996).

they are imposed (1) to protect the patient from personal harm or injury; (2) to allow staff to investigate any misconduct in a safe and secure manner; and (3) to monitor the patient's ability to follow basic rules. Although his living conditions were restricted somewhat while he was on 72-hour reassignment status, Clark was still allowed to move around the unit freely during dayroom hours, participate in activities, interact with other patients, and dine on the unit. On February 20, 2006, Clark was released from 72-hour reassignment and given a five-day loss of dayroom disposition.

Clark filed the instant action on February 28, 2006, seeking injunctive and declaratory relief as well as monetary damages. On December 1, 2006, defendants filed a motion for summary judgment, which gave plaintiff notice of the consequences of failing to respond to defendants' affidavits or motion. *See* L.R. 56.1, 56.2. Defendant filed a motion for default judgment on December 11, 2006, arguing that defendants were one day late in returning waiver of service, and that their answer, filed 58 days after they received the complaint, was thus untimely as well.

## ANALYSIS

**I. Motions for summary judgment**

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Id.* at 323. Once this burden is met, the nonmoving party must designate specific facts to support or defend its case. *Id.* at 322-24.

In analyzing whether a question of fact exists, the court construes the evidence in the light most favorable to the party opposing the motion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion, however; there must be a *genuine* issue of *material* fact for the case to survive. *Id.* at 247-48.

**II. Law governing official conduct toward civil detainees**

Chapter 980 patients are civil detainees, and so, unlike prisoners, they may not be punished. *Youngberg v. Romeo*, 457 U.S. 307, 320 (1982). However, chapter 980 patients may be subjected to "conditions that advance goals such as preventing escape and assuring the safety of others . . . ." *Allison v. Snyder*, 332 F.3d 1076, 1079 (7th Cir. 2003). When determining whether conditions of civil confinement are punitive, courts are to defer to the judgment exercised by qualified professionals. *Youngberg*, 457 U.S. at 321. The term "qualified professionals" means persons who are "competent, whether by education, training or experience, to make the particular decision at issue." *Id.* at 323 n.30. Decisions made by such professionals regarding the conditions of civil confinement are "presumptively valid." *Id.* at 323. In reviewing such decisions, the court's role is to "make certain that professional judgment in fact was exercised. . . . [rather than] to specify which of several professionally acceptable choices should have been made." *Id.* at 321 (citation omitted); *see also Barichello v. McDonald*, 98 F.3d 948, 953 (7th Cir. 1996).

This professional judgment standard applies not only to those with formal training, but also to those in the trenches (i.e., those who must make decisions without delay), provided that they are subject to the supervision of qualified professionals and refrain from making long-term treatment

4

decisions. *Youngberg*, 457 U.S. at 323 n.30. Thus, day-to-day decisions made by a PCS or a supervising officer that affect the conditions of civil confinement are analyzed under the professional judgment standard. *Williams v. Nelson*, 398 F. Supp. 2d 977, 988-89 (W.D. Wis. 2005); *Robinson v. Fergot*, No. 04-C-193-C, 2005 WL 300376, *5 (W.D. Wis. 2005). According to the Seventh Circuit, professional judgment "generally falls somewhere between simple negligence and intentional misconduct." *Estate of Porter v. Illinois*, 36 F.3d 684, 688 (7th Cir. 1994) (quoting *Shaw by Strain v. Strackhouse*, 920 F.2d 1135 (3rd Cir. 1990)).

In discussing the Due Process protections of pretrial detainees—a group that, like civil detainees, may not be subjected to punitive conditions of confinement—the Supreme Court stated that "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense . . . . Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention." *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). In determining whether a condition or restriction is punitive, the key question is therefore "whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose." *Bell*, 441 U.S. at 538. Clearly, the State has a legitimate interest in maintaining order and security at institutions housing civil detainees. *See Robinson* at *5. Thus, there are occasions in which the State must necessarily restrain detainees' movements or otherwise impose conditions of confinement as an incident of maintaining order and security. *See Youngberg*, 457 U.S. at 320; *Allison*, 332 F.3d at 1079.

5

### III. Discussion

The decision to place Clark in 72-hour reassignment status was made by qualified professionals, pending an investigation into his altercation with another patient. Clark has introduced no evidence to rebut the presumption that his placement in 72-hour reassignment status was not punitive. In fact, "[t]emporary reassignment [of a civil detainee] is not grounded in punitive intent; it is merely a part of the process by which officials at the facility investigate alleged misconduct and determine what steps should be taken in response." *Robinson* at *5. Defendants' conduct was fully in line with WRC's policy regarding the use of 72-hour reassignment status. (DPFOF ¶ 22.) The property and liberty deprivations he endured while on 72-hour reassignment status were those dictated by WRC policy for anyone placed in such status, and the deprivations were merely incidental to WRC's legitimate interest in maintaining order and security.

### IV. Motion for default judgment

Shortly after defendants filed a motion for summary judgment on December 1, 2006, Clark filed a motion for default judgment. In his motion, Clark points out that he mailed requests for waiver of service to defendants on April 11, 2006, and the waivers were returned 31 days later, on May 12, 2006, one day later than the 30-day maximum set forth in the requests themselves. The defendants filed their answer on June 8, 2006, 58 days after the waiver packages were mailed. In short, Clark argues that because defendants were one day late in returning their waivers of service, they are not entitled to the extended 60-day response time laid out in Rule 4. *See* Fed. R. Civ. P. 4(d)(3).

Clark's argument is faulty on at least two grounds. First, a party who does not waive service must be served formally; otherwise, the plaintiff has not complied with basic notice requirements. If Clark wishes to regard defendants' waiver as untimely and thus ineffective, he must show that he served them formally. *See* Fed. R. Civ. P. 4(c). However, the record gives no indication that Clark attempted formal service on either defendant.[4] Thus, Clark's argument rests on contradictory bases. He cannot claim that defendants' waivers were ineffective and simultaneously presume to have effected proper service upon them.

Second, even if Clark had properly served defendants, the court would not enter a default judgment in these circumstances. A default judgment is a sanction for misconduct in litigation, and every sanction should fit the offense. Default judgment would not fit the "offense" of a single day's tardiness in returning a waiver request. *See Sims v. EGA Prods., Inc*, Nos. 06-1057 & 06-1268, 2007 WL 162843, at *4 (7th Cir. Jan. 24, 2007) ("[D]istrict judges should not enter defaults precipitately.").

## CONCLUSION

Clark has introduced no evidence rebutting the presumption that defendants' conduct was not punitive, nor any evidence that defendants failed to exercise professional judgment in placing him in 72-hour reassignment status. The liberty and property deprivations he underwent while on that status were merely incidental to the government's legitimate interest in maintaining order and security at WRC. Finally, default judgment is not warranted where, as here, plaintiff's argument

---

[4] Defendants have not raised any objections, such as lack of personal jurisdiction, and in fact have waived personal jurisdiction by failing to assert the defense in their answer. *See* Fed. R. Civ. P. 12(b).

7

implies defendants have not been properly served, and where the defendants' alleged misconduct—answering one day late—is relatively minor.

**IT IS THEREFORE ORDERED** that defendant's motion for summary judgment be **GRANTED**. All of plaintiff's claims are dismissed, with prejudice.

**IT IS FURTHER ORDERED** that plaintiff's motion for default judgment be **DENIED**.

Dated this    28th    day of February, 2007.

           s/ William C. Griesbach
           William C. Griesbach
           United States District Judge